United States District Court
Central District of Illinois
Urbana Division

**FILED**
DEC 30 2020
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Jason Gmoser

Case No. 20-cv-1294

vs.

Chief Judge Sara Darrow

Stuart Inman
Class Officer Martin

### Plaintiff's Response to Defendant's Motion for Summary Judgment

Now comes pro se Plaintiff Jason Gmoser responding to Defendant's Motion for Summary Judgment.

### Introduction

Defense states that because Plaintiff never submitted a jail grievance about any of the issues raised in his lawsuit, he failed to exhaust Livingston County Jail's ("LCJ") internal administrative grievance procedures relating to his claim against Defendant Correctional Officer Sherry Martin, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. 1997e(a). This conclusion is incorrect. Plaintiff followed the established grievance procedures multiple times before and after the assault; each time his administrative remedies were exhausted. This can happen without ever once filing a formal jail grievance, as has happened here. Therefore, this suit is not barred by the PLRA, and the motion for summary judgment should be denied.

## Response to Undisputed Material Facts

Undisputed Material Facts:
Statements #1-17 are conceded to be undisputed and material.

Additional Material Facts:

1. Pursuant to the detainee handbook, a detainee must attempt to informally resolve the issue before filing a grievance. Grievances should not be the only method for resolving an issue. If a detainee cannot resolve the issue informally, he/she should explain why in the grievance. (Ex. B, LCJ Detainee Handbook, p. 7). Therefore, verbal or written requests to staff are the proper first step to the grievance process.

2. Defendant Martin was notified of housing problems and threats against Plaintiff relating to his case around March 2019. (Ex. 1, Affidavit of Jason Gmoser, ¶9).

3. Plaintiff notified staff about a housing problem on or around 5-28-19. (Ex. 1, Aff. of Jason Gmoser, ¶10; Ex. 2).

4. Defendant Martin was made aware of housing problems and threats against Plaintiff relating to his case around 5-28-19. (Ex. 1, Aff. of Jason Gmoser, ¶10-11; Ex. 2).

5. Plaintiff notified staff about a housing problem relating to his case on or around 8-2-19. (Ex. 1, Aff. of Jason Gmoser, ¶12; Ex. 3).

6. Defendant Martin classified and placed dangerous inmates around Plaintiff between the end of May 2019 to May 30, 2020. (Ex. 1, Aff. of Jason Gmoser, ¶13-14). This was accomplished by removing safe sex-offenders.

7. Plaintiff notified staff about housing problems and threats against him relating to his case on 5-30-20. (Ex. 1, Aff. of Jason Gmoser, ¶14-15).

8. Plaintiff requested protected housing in a sex-offender pod on 5-30-20 because of housing problems and threats against him relating to his case and was informed that LCJ does not provide protected housing to sex-offenders. (Ex. 1, Aff. of Jason Gmoser, ¶14-15).

9. Defendant Martin was made aware of the housing problems and threats against Plaintiff relating to his case on 6-1-20. (Ex. 1, Aff. of Jason Gmoser, ¶14-15).

10. Defendant Martin classified and placed Plaintiff around several violent gang members, resulting in his assault on 6-1-20. (Ex. 1, Aff. of Jason Gmoser, ¶15-16).

11. Plaintiff notified staff about threats against him relating to his case on 6-1-20. (Ex. 1, Aff. of Jason Gmoser, ¶16).

2. Plaintiff was forced to remain housed with several violent gang members after his assault and requesting protection on 6-1-20 and 6-2-20. (Ex. 1, Aff. of Jason Gmoser, ¶16-18).

3. Plaintiff had no knowledge of Inmate Torres prior to the confrontation on 6-1-20. (Ex. 1, Aff. of Jason Gmoser, ¶19).

4. Plaintiff followed the established grievance procedures multiple times; each time his administrative remedies were exhausted without ever once filing a formal jail grievance. (Ex. 1, Aff. of Jason Gmoser, ¶9-19).

## Argument

### Plaintiff has exhausted his administrative remedies multiple times and thus his suit is not barred by the Prison Litigation Reform Act

Around March 2019 Plaintiff made Defendant Martin aware of housing problems and threats against him relating to his case (Pl's SOF ¶2). As Plaintiff never felt in immediate danger of these inmates acting out on their feelings, no steps were taken in the grievance process; there were no issues for staff to resolve (Pl's SOF ¶1). However, this was implicitly the first request for protection relating to Plaintiff's case.

Around 5-28-19 Plaintiff made staff aware of a housing problem requiring staff intervention (Pl's SOF ¶3). Plaintiff submitted Request 134670 (Ex. 2) and officers complied by removing the obstructions from the air vents. The grievance process was properly followed by seeking an informal resolution to the issue; submitting Request 134670. As the issue was resolved, the next step of filing a grievance was barred (Pl's SOF ¶1); the grievance process was exhausted.

Around 5-28-19 Plaintiff made Defendant Martin aware of housing problems and threats against him relating to his case (Pl's SOF ¶3-4). Plaintiff pressed the intercom button and alerted officers to immediate danger, prompting his re-classification by Defendant Martin and transfer to a different pod. The grievance process was properly followed by seeking an informal resolution to the issue; pressing the intercom button. As the issue was resolved by eliminating the threat from Spann, the next step of filing a grievance was barred (Pl's SOF ¶1); the grievance process was exhausted. This was explicitly the second request for protection relating to Plaintiff's case.

Around 8-2-19 Plaintiff made staff aware of a housing problem relating to his case requiring staff intervention (Pl's SOF ¶5). Plaintiff submitted Request 154805 (Ex. 3) and an officer complied by talking to Chavez and assuring this would not happen again. The issue continued and Plaintiff spoke with the officer again, prompting Chavez's removal. The grievance process was properly followed by seeking an informal resolution to the issue: submitting Request 154805, and speaking with the officer. As the issue was first resolved by talking to Chavez and finally resolved by removing him, the next step of filing a grievance was barred (Pl's SOF ¶1); the grievance process was exhausted.

For a year between May 2019 and May 2020 Plaintiff was exposed to greater risk as safe sex-offenders were removed and replaced with other higher-risk inmates (Pl's SOF ¶6). As Plaintiff never felt in immediate danger from these inmates prior to 5-30-20, no steps were taken in the grievance process; there were no issues for staff to resolve (Pl's SOF ¶1).

Around 5-30-20 Plaintiff made Defendant Martin aware of housing problems and threats against him relating to his case (Pl's SOF ¶7-9). Plaintiff pressed the intercom button and alerted officers to immediate danger, prompting his re-classification by Defendant Martin and transfer to a different pod (Pl's SOF ¶10). The grievance process was properly followed by seeking an informal resolution to the issue: pressing the intercom button. As the issue was resolved by eliminating the threat from Colunga, the next step of filing a grievance was barred (Pl's SOF ¶1); the grievance process was exhausted. This was explicitly the third request for protection relating to Plaintiff's case. As Plaintiff accepted the explanation that LCJ does not have a protected sex-offender pod, no steps were taken in the grievance process; there were no issues for staff to resolve (Pl's SOF ¶1); Plaintiff did not and does not seek resolution of this issue.

Around 6-1-20 Plaintiff made staff aware of threats against him relating to his case (Pl's SOF ¶11, Def's SOF ¶13). Plaintiff pressed the intercom button and alerted officers to immediate danger. He was assaulted by Inmate Torres before officers could do anything. The grievance process was properly followed by seeking an informal resolution to the issue: pressing the intercom button. As the issue was resolved by eliminating the threat from Torres, the next step of filing a grievance was barred (Pl's SOF ¶1); the grievance process was exhausted. This was explicitly the third request for protection relating to Plaintiff's case, but by then it was too late.

Around 6-2-20 Plaintiff explicitly made his fourth request for protection relating to his case, but was forced into high-risk housing again (Pl's SOF ¶12, 6). As Plaintiff reluctantly accepted this housing situation and never felt in immediate danger, no steps were taken in the grievance process; there were no issues for staff to resolve (Pl's SOF ¶1); Plaintiff did not and does not seek resolution of this issue.

Plaintiff had no knowledge of Inmate Torres prior to the confrontation on 6-1-20, so he could not have alerted staff in any way to threats from this particular inmate (Pl's SOF ¶13; Def's SOF ¶14).

Not one of Plaintiff's 33 formal grievances addressed the issues alleged in this lawsuit, however that does not mean that the established grievance procedure was not followed or exhausted as required by the PLRA. The foregoing proves that the established grievance procedure was followed and exhausted multiple times; each time Plaintiff was in immediate danger and alerted officers was implicitly a grievance about Defendant Martin failing to protect him and again requesting her protection; that process was exhausted each time as she moved Plaintiff to a perceived safer environment or removed the inmate causing the threat. There was no grievance about Defendant Martin's denial of requests for protection as she attempted to provide safer housing each time.

Around March 2019 Defendant Martin was made explicitly aware that Plaintiff feared being attacked because of his sexual preferences but did nothing; returning him to his previous housing area and ignoring the threat. Defendant Martin was made aware of Plaintiff's fear of being attacked because of his sexual preferences each time he was almost attacked because of them; each time he followed the established grievance procedure seeking protection and exhausting the grievance procedure by being moved to perceived safer housing. Defendant Martin was also made aware after the attack; Plaintiff followed the established grievance procedure seeking protection just prior to the attack and exhausting the grievance procedure by being placed back in perceived safer housing after the removal of attacker Torres.

Jail officials were given ample time and multiple opportunities to address Plaintiff's complaint before filing suit: 17 months between March 2019 and August 2020, four requests for protection, two formal requests involving housing issues, two incidents where Plaintiff was almost attacked, and one incident where he was attacked; each of them an informal grievance involving housing issues and fear of attack relating to his case. They responded with deliberate indifference by ignoring the potential for danger until there was in fact immediate danger and then acting. Not only were these acts negligent but also exhibited gross negligence throughout the year prior to the attack on 6-1-20 by continuing to expose Plaintiff to increasing danger until an actual attack was inevitable. What is more disturbing is that this deliberate indifference and gross negligence extends to Superintendent Immisn; he was notified of Plaintiff's fear of further attack and request for protection on 6-2-20 but, under threat of disciplinary action, refused Plaintiff's request, forcing him to return to a high-risk environment.

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment should be denied.

/s/ Jason Gmoser

Jason Gmoser pro se
Livingston County Jail
Inmate #40889
844 W. Lincoln St.
Pontiac, IL 61764
815-844-5774
815-842-8065 (Fax)

United States District Court
Central District of Illinois
Urbana Division

Jason Gnoser

vs.

Stuart Inman
Class Officer Martin

Case No. 20-cv-1294

Chief Judge Sara Darrow

Certificate of Compliance with Local Rule 7.1(B)(4), (D)(5)

The undersigned Plaintiff does hereby certify the "Argument" Section of Plaintiff's Response to Defendant's Motion for Summary Judgment does not exceed 108 lines.

Jason Gnoser pro se

United States District Court
Central District of Illinois
Urbana Division

| | |
|---|---|
| Jason Gmoser | Case No. 20-cv-1294 |
| vs. | |
| Stuart Inman | Chief Judge Sara Darrow |
| Class Officer Martin | |

Certificate of Service

I hereby certify that on December 23, 2020 I sent the foregoing Plaintiff's Response to Defendant's Motion for Summary Judgment via regular mail to:

United States District Court
Central District of Illinois
Office of the Clerk
201 S. Vine St.
Room 218
Urbana, IL 61802-3348

/s/ Jason Gmoser pro se